Charlene N. BARNHILL,
Plaintiff-Appellee,

v.

PUBLIC SERVICE COMPANY OF COLO-
RADO, a corporation existing under the
laws of the State of Colorado, Defend-
ant-Appellant.

No. 79CA0813.

Colorado Court of Appeals,
Div. III.

Feb. 4, 1982.

Rehearing Denied Feb. 25, 1982.

Certiorari Granted July 19, 1982.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Richard W. Bryans, Denver, for defendant-appellant.

PIERCE, Judge.

In this wrongful death action, defendant, Public Service Company of Colorado (PSCO), appeals a final judgment entered in favor of Charlene Barnhill, widow of the deceased. We affirm.

In May 1973, while the deceased and his brother were trimming a tree in the backyard of the Barnhills' rental property, a ladder they were using came in contact with an electric line owned and maintained by PSCO. As a result of that contact, the deceased was instantaneously killed. In March 1977, Charlene filed this action and later prevailed in a trial to the jury which found PSCO 70% negligent and the deceased 30% negligent.

I.

PSCO first argues that the trial court erred in tolling the two-year wrongful death statute of limitations then in effect, § 13–21–204, C.R.S. 1973, because of Charlene's mental disability. We disagree.

It is undisputed that almost four years elapsed between the date of the accident and the filing of Charlene's action. It was also undisputed that Charlene was mentally incapacitated, and thus disabled, from the date the tort was committed through the commencement of this action.

Under such circumstances, we hold that the statutory period stated in § 13–21–204, C.R.S. 1973, never started to run because plaintiff's mental incapacity continued through the date this action was commenced, and, thus, she was under a disability such that § 13–81–103, C.R.S. 1973, applied to toll § 13–21–204, C.R.S. 1973. *See In re Estate of Daigle*, Colo., 634 P.2d 71 (1981); *Antonopoulos v. Telluride*, 187 Colo. 392, 532 P.2d 346 (1975). "If a person under a disability is without a legal representative," as Charlene was here, the statute of limitations does not run. *Price v. Sommer-*

Law Offices of Shelley B. Don, Shelley B. Don, Bruce A. Lampert, Richard M. Goodman, Ronald M. Andersen, Denver, for plaintiff-appellee.

*meyer*, 41 Colo.App. 147, 584 P.2d 1220 (1978), *aff'd*, 198 Colo. 548, 603 P.2d 135 (1979).

■ Only when a specific conflicting tolling provision exists, *Kuckler v. Whisler*, 191 Colo. 260, 552 P.2d 18 (1976), or when the statute of limitations itself indicates otherwise, *Sommermeyer v. Price*, 198 Colo. 548, 603 P.2d 135 (1979), do the general tolling provisions of § 13–81–103, C.R.S. 1973, not apply to a statute of limitations. Otherwise, § 13–81–103, C.R.S. 1973, tolls *"all* limitations of time contained in any of the statutes of the State of Colorado." *Sommermeyer v. Price, supra* (emphasis added). Section 13–21–204, C.R.S. 1973, does not indicate otherwise, nor does a specific tolling provision here conflict with § 13–81–103, C.R.S. 1973. Thus, the trial court did not err in holding that Charlene's disability tolled the running of § 13–21–204, C.R.S. 1973.

PSCO argues, however, that the tolling provisions of § 13–81–103, C.R.S. 1973, do not apply here because § 13–21–204, C.R.S. 1973, is not only a statute of limitations, but also a non-claim statute. We disagree.

■ The provisions of § 13–81–103, C.R.S. 1973, do not affect a court's jurisdiction to act, but rather impose a statutory toll to a statute of limitations. *Daigle, supra.* However, these provisions do not toll a non-claim statute because a non-claim statute deprives a court of its subject matter jurisdiction and imposes a condition precedent to the enforcement of the right of action. *Daigle, supra.*

Therefore, the essential question here is whether § 13–21–204, C.R.S. 1973, is more aptly characterized as a non-claim statute or as a statute of limitations. To distinguish a non-claim statute from a statute of limitations, their respective purpose and effect must be scrutinized.

Two common examples of Colorado non-claim statutes are § 15–12–801, C.R.S. 1973 (1980 Cum.Supp.), and § 24–10–109, C.R.S. 1973 (1980 Cum.Supp.). *Daigle, supra; Antonopoulos, supra.* Section 15–12–801, C.R.S. 1973 (1980 Cum.Supp.), requires a creditor of an estate to give notice of his claim to the estate, while § 24–10–109, C.R.S. 1973 (1980 Cum.Supp.), requires one seeking to recover for personal injuries from a public entity to give notice of his claim to that entity.

■ The purpose of each non-claim statute is to effectuate the substantive rights of the party against whom the claim is asserted, usually a governmental entity or a court officer. The time limits in which notice must be given to an estate as contained in § 15–12–801, C.R.S. 1973 (1980 Cum.Supp.), are imposed " '[t]o promote a speedy and efficient system for settling the estate of the decedent . . . .' " *Daigle, supra.* In § 24–10–109, C.R.S. 1973 (1980 Cum.Supp.), the time limits in which notice must be given to a public entity are imposed so that it can make a prompt investigation of claims. *See State Compensation Insurance Fund v. Colorado Springs*, 43 Colo.App. 112, 602 P.2d 881 (1979). Hence, the purpose of a non-claim statute is to impose a condition precedent, namely, filing notice within the time specified, to the enforcement of the right of action for the benefit of the party against whom the claim is made.

The effect of a non-claim statute is demonstrated by a non-compliance with the condition precedent established by the statute to the enforcement of the right of action. For example, if timely notice is the requisite condition, noncompliance with that condition precedent prevents what otherwise might be a cause of action from ever arising, because, in that instance, a court lacks subject matter jurisdiction to hear the cause of action. *Daigle, supra.* Therefore, a non-claim statute bars substantive claims. *Daigle, supra.*

■ In contrast, the purpose of a statute of limitations is to limit the time in which an action may be commenced by forestalling the prosecution of stale claims. *State Board of Medical Examiners v. Jorgensen*, 198 Colo. 275, 599 P.2d 869 (1979). That purpose is an integral part of the procedural rules relating to the commence-

ment, maintenance, and prosecution of suits. *Restatement (Second) Conflicts of Law* § 122, Comment a (1971). The effect of a statute of limitations running is a procedural alteration or modification of the remedy sought. *Daigle, supra.*

In light of these distinctions, we hold that the purpose and the effect of § 13–21–204, C.R.S. 1973, are more similar to those of a statute of limitations than to non-claim statutes. No condition precedent, such as filing a timely notice, is set out in § 13–21–204, C.R.S. 1973. The purpose of § 13–21–204, C.R.S. 1973, unlike a non-claim statute, is not to expedite a wrongful death claim for the benefit of the tortfeasor. Rather, the purpose is to prevent a party otherwise entitled to sue from recovering net pecuniary loss from the death. *See Peck v. Taylor*, 38 Colo.App. 90, 554 P.2d 698 (1976); Annot., 85 A.L.R.3d 162 (1978). The time limitation in this statute affects the beneficiary's remedy to recover for net pecuniary loss without imposing a condition precedent to the enforcement of the right of action. Therefore, since the emphasis of the statute is on the remedy and not the cause of action, a disability, as noted in § 13–81–103, C.R.S. 1973, should toll § 13–21–204, C.R.S. 1973.

PSCO further argues, however, that § 13–21–204, C.R.S. 1973, as a part of the wrongful death statute, must be strictly interpreted here because the act is derived by statute and it was not established at common law. This analysis, although recognized by other jurisdictions, is faulty. *See* Annot., 85 A.L.R.3d 162 (1978). It ignores not only the remedial purpose of our wrongful death statute, but also uses an unrealistic formal legal abstraction.

The primary purpose of the Colorado wrongful death statute is to compensate those who suffer a direct loss from the death. *Peck v. Taylor, supra.* This remedial purpose, however, would be defeated by denying recovery here. To give the best effect to the compensatory purpose of the wrongful death act, the beneficiaries thereunder should be afforded the same procedural opportunities given to other tort claimants, which would include the general provisions of § 13–81–103, C.R.S. 1973. The wrongful death statute itself discloses no purpose to annul rights that might otherwise exist independent of that statute. *See generally* § 13–21–201, et seq., C.R.S. 1973 (1980 Cum.Supp.).

Consequently, the trial court did not err in holding that § 13–81–103, C.R.S. 1973, as it applied here because of Charlene's mental disability, tolled the running of § 13–21–204, C.R.S. 1973.

II.

PSCO next argues that the trial court erred by not allowing evidence before the jury concerning Charlene's remarriage. We disagree.

Evidence of the surviving spouse's remarriage is irrelevant in that the damages in this type of action are calculated at the time of the death, and remarriage is highly speculative as proof in mitigation of damages. *Kimery v. Public Service Co.*, 562 P.2d 858 (Okl.1977); Annot., 88 A.L.R.3d 926 (1978). Moreover, the collateral source doctrine, as adopted in Colorado, excludes such evidence from the jury's consideration. *See DeWeese v. United States*, 419 F.Supp. 170 (D.Colo.1976), *aff'd*, 576 F.2d 802 (10th Cir. 1978). *See generally Kistler v. Halsey*, 173 Colo. 540, 481 P.2d 722 (1971). Also, damages for wrongful death are limited to net pecuniary loss. Section 13–21–203, C.R.S. 1973. Thus, the loss compensated is what the surviving spouse would have reasonably expected to receive from the decedent had the decedent spouse survived, not the surviving spouse's financial situation after the decedent's death. *See DeWeese, supra.* Therefore, because evidence of plaintiff's remarriage would not have contributed to the jury's determination of damages but rather would have only served to confuse the issues, the trial court did not err in refusing its admission. *See Sego v. Mains*, 41 Colo.App. 1, 578 P.2d 1069 (1978).

III.

PSCO finally argues that the trial court erroneously instructed the jury as to

PSCO's duties since there was no evidence to support that instruction and that the trial court erred in not granting it a directed verdict because the evidence failed to establish, as a matter of law, PSCO's negligence. We disagree with these contentions.

If sufficient evidence supports a party's theory of the case, that party is entitled to have a jury instruction as to his legal theory. *Federal Insurance Co. v. Public Service Co.*, 194 Colo. 107, 570 P.2d 239 (1977). The record reveals that sufficient evidence existed here to warrant giving the contested instruction.

Moreover, in considering the motion, the evidence here had to be viewed in the light most favorable to the plaintiff, and reasonable persons could reach more than one conclusion from the evidence here so as to make an issue for the jury. *See Roberts v. Bucher*, 41 Colo.App. 138, 584 P.2d 97 (1978), *rev'd on other grounds*, 198 Colo. 1, 595 P.2d 239 (1979). Thus, the trial court did not err in denying defendant's motion for a directed verdict.

The judgment is affirmed.

SMITH and STERNBERG, JJ., concur.